Jerry Markowitz, Richard M. Goldstein, Goldstein & Tanen, P.C., Miami, Fla., for Industria de Ganaderos Guatemaltecos, S.A.

Steven H. Friedman, Miami, Fla., for trustee.

**In re Pedro A. LOPEZ and Maria L. Lopez, International Trading and Shipping Corp., and El Caporal Products, Inc., Debtors.**

**Bankruptcy Nos. 85–02990–BKC–AJC to 85–02992–BKC–AJC.**

United States Bankruptcy Court, S.D. Florida.

July 13, 1990.

ORDER DENYING PEDRO LOPEZ'S MOTION TO IMPOSE RULE 11 SANCTIONS

A. JAY CRISTOL, Bankruptcy Judge.

THIS CAUSE came on to be heard before this court on Wednesday, June 23, 1990 on PEDRO LOPEZ'S (LOPEZ) Motion to Impose Rule 11 (Bankruptcy Rule 9011) Sanctions Against INDUSTRIA DE GANADEROS GUATEMALTECOS, S.A. (IGG) and Richard M. Goldstein (GOLDSTEIN), and this court having heard argument of counsel, including counsel for the Trustee, having reviewed the Motion and the Response thereto and all other relevant pleadings and documents, and this court being fully advised in the premises, this court finds as follows:

1. On September 30, 1985, IGG obtained a Final Judgement against International Trading and Shipping Corporation (ITSC) in the amount of $1,921,635.60, which judgement remains unpaid.

2. LOPEZ was the sole stockholder, director and president of ITSC and a related

corporation, El Caporal Products, Inc., (EL CAPORAL).

3. Shortly after IGG obtained its final judgement against ITSC, LOPEZ filed for individual bankruptcy and caused ITSC and EL CAPORAL to file voluntary petitions. These case have been jointly administered.

4. IGG conducted discovery as well as a detailed review and analysis of the books and records of ITSC and EL CAPORAL. That discovery and analysis determined shortfalls in accounting for a large sum of money. It further established that LOPEZ was the sole person in charge of and responsible for all funds and transactions and for the maintenance of the books and records of ITSC and EL CAPORAL. IGG's counsel represented that more than $100,-000 was expended to reconstruct and analyze the debtor corporations' records.

5. After completion of the discovery and analysis, IGG then sought to preclude the discharge of those obligations by LOPEZ by petitioning this court, pursuant to 11 U.S.C. § 523(a)(4) and § 727, to deny LOPEZ's discharge of the debt evidenced by IGG's final judgement against ITSC. In support of its petition, IGG alleged that LOPEZ had diverted funds from the two corporations.

6. A hearing on IGG's objection to discharge was held on July 30, 1987. At the start of the hearing, this court advised IGG's counsel of the difficulty it had with the complaint because it was apparent that the wrongful actions which were the thrust of the complaint pertained to ITSC and not LOPEZ.

7. Later in the hearing IGG's counsel stated the intention in filing as, "... we were concerned that if we didn't avoid the discharge of Mr. Lopez in this Chapter 7 proceeding, that we would then be foreclosed after we pierced the veil from recovering from him." (Trial Transcript for July 30, 1987, page 33, lines 19–23).

8. This court, after determining that a claim against LOPEZ would only be valid if the corporate veil was pierced, granted stay relief for IGG to proceed in state court to attempt to pierce the corporate veil of ITSC and to obtain a judgement against LOPEZ, individually, for his alleged improper diversion of funds.

9. IGG filed a complaint against LOPEZ in state court to impose liability against LOPEZ by piercing the corporate veil. IGG alleged that the unaccounted for monies were either fraudulent conveyances under § 726.01 of the *Fla.Stat.;* was an unlawful dividend paid to LOPEZ; or was the personal liability of LOPEZ under common law as a result of his misapplication of the funds and property of ITSC to the detriment of IGG.

10. A voluntary dismissal of IGG's action was taken after certain evidentiary ruling were made at the trial which precluded the introduction of records reconstructed by an accounting firm.

11. Bankruptcy Rule 9011 tracks Federal Rule 11. The Advisory Committee Notes to the 1983 Amendment to Rule 11 appropriately defines its purpose and application. It states, in part, "[t]he rule is not intended to chill an attorney's enthusiasm or creativity in pursuing factual or legal theories. The court is expected to avoid the wisdom of hindsight and should test the signers conduct by inquiring what was reasonable to believe at the time the pleading, motion, or other paper was submitted."

12. "The standard for testing conduct under Rule 11 is 'reasonableness under the circumstances', an objective standard of good faith ..." *Laborers Local 938 Joint Health and Welfare Trust Fund v. B.R. Starnes Company of Florida,* 827 F.2d 1454, 1458 (11th Cir.1987).

13. It was not unreasonable, based on the books and records of ITSC and EL CAPORAL and the large sums of unaccounted for funds, for IGG to initiate a lawsuit in state court and pursue a possible claim against LOPEZ individually. See *Mihalik v. Pro Arts, Inc.,* 851 F.2d 790 (6th Cir.1988). Nor was it unreasonable or in bad faith for IGG to have objected to LOPEZ's discharge in this court.

14. The court further notes that IGG filed its voluntary dismissal of the state court action on May 2, 1989, but this Mo-

tion was not filed until May 8, 1990, over one year later.

15. Based upon the foregoing, it is hereby,

ORDERED and ADJUDGED that PEDRO LOPEZ's Motion to Impose Rule 11 Sanctions against INDUSTRIA DE GANADEROS GUATEMALTECOS, S.A. and Richard M. Goldstein is hereby DENIED.

DONE and ORDERED.